UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| EMILIANO ERMINI, <br><br> Petitioner, <br><br> v. <br><br> VIVIANA VITTORI, <br><br> Respondent. | ) <br> ) <br> ) No. 12-cv-06100 (LTS) (HJP) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

### MEMORANDUM OF LAW IN SUPPORT OF RESPONDENT'S MOTION *IN LIMINE* TO PRECLUDE CERTAIN PETITIONER TESTIMONY AND FOR AN ADVERSE INFERENCE

Respondent Viviana Vittori respectfully submits this memorandum of law in support of her motion *in limine* for an order (1) precluding Petitioner Emiliano Ermini from testifying at trial regarding subjects about which he willfully refused to answer questions at his deposition, including his family's presence in Suffern, New York in 2011 or the circumstances under which they lived there, and any purported agreement that would have permitted him to return to his job in Italy, from which he resigned in 2011[1]; and (2) based upon Ermini's refusal to provide electronic discovery, adopting an adverse inference that his 2011 email communications would rebut his claims in this case.

### PRELIMINARY STATEMENT

At his December 20, 2012 deposition, Ermini refused to answer questions that go to the heart of this matter. Prompted by his counsel's improper speaking objections, he pretended not to understand words such as "live" and "house." He also flatly refused to divulge his email addresses, though he acknowledged that he has several. In addition, Ermini has not produced a

---

[1] While Petitioner should be precluded from offering his own testimony on these topics, he may nonetheless offer evidence through other witnesses.

single email communication from 2011.  This misconduct is a transparent attempt to withhold evidence showing Ermini's intent in 2011 to abandon Italy and make the United States his family's habitual residence—the central issue in this action.

For example, Ermini refused to provide any testimony at all relating to presence of his family—including Vittori and the children Emanuele and Daniele Ermini—in Suffern, New York in 2011, even though his lawsuit is premised on this fact.  *See, e.g.*, Compl. ¶ 4; *id*. Ex. 8 (Ermini Application to the U.S. Dept. of State, July 26, 2012) at 3 ("Upon information and belief, my wife resides with my children at: 9 Chestnut Street, Suffern, New York") (both attached as Ex. A to Declaration of Jacob Press in Support of Respondent's Motion *In Limine* to Preclude Certain Petitioner Testimony and for an Adverse Inference, dated January 9, 2013 ("Press Decl.")).[2]

The following exchanges are illustrative:

Q. Have you ever heard of the address 9 Chestnut Street in Suffren [sic]?
. . .
A. The specific number, number 9 as the specific number?

(Transcript of Deposition of Petitioner Emiliano Ermini, December 20, 2012 ("Ermini Trans.") 166:20-25) (attached as Ex. B to Press Decl.)

\*\*\*

Q. Have you ever been inside any house in Suffren [sic]?

MR. LAMURA [Petitioner's Counsel]: Objection, vague. It's ambiguous, actually.

A. Could you please specify: house, hotel, residence?

(*Id*. at 167:5-10).

---

[2] Because Ermini is a native speaker of Italian, his deposition testimony was taken through an interpreter. Petitioner acknowledged that he could understand counsel's questions as translated (Ermini Trans. 5:9-12) (attached as Ex B to Press Decl.) and that, when he answered a question, it would be assumed that he had understood it and given his best recollection. (*Id*. 6:17-20).  Further, Petitioner was represented at the deposition by two Italian-speaking attorneys who, despite lodging an extraordinary number of objections, made no object ion to the competence of the interpreter.

\*\*\*

Q. In October 2011 where did Ms. Vittori live?

MR. LAMURA: Objection, misstates a fact.

A. What do you mean by "live"?

(*Id*. at 167:16-20).

\*\*\*

Q. And did Emanuele Ermini attend school in the United States in 2011?

MR. BILALI: [Petitioner's Counsel] Objection to form. You can answer the question that the counsel just posed if you understand it and if you know about it.

A. I understand the question, but I don't know the answer. (*Id*. at 168:13-20).

Similarly, in trying to explain why he gave up his well-paying job in Italy in December 2011, as part of his plan to settle in the United States, Ermini claimed he had an arrangement with his former boss in Italy, "Mr. Tortorella," to have his job back whenever he wanted it. But when asked to explain the specifics of this supposed arrangement, Ermini simply refused to answer, asserting that "I don't believe this is the proper place." *Id*. at 105:21-24.[3]

The record leaves no doubt that Ermini's conduct was part of a willful effort to obstruct discovery under the instruction of counsel. Again and again, Ermini's counsel improperly coached the deponent into obstructing the deposition, as in the following instances:[4]

Q. When did you first ask Ms. Vittori to return Emanuele Ermini and Daniele Ermini to the United States -- to Italy, excuse me.

MR. BILALI [Petitioner's Counsel]: You may answer the question posed by counsel if you understand the question and if you know how to answer it.

---

[3] Likewise, while Ermini was willing to acknowledge that he took steps to sell the family home in Italy, he would not say when. *Id*. 117:16-25, 118:13-119:11.

[4] *See* Fed. R. Civ. P. 30(c)(2) ("An objection must be stated concisely in a nonargumentative and nonsuggestive manner. A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3).")

A. In fact, I want to ask a specification when the counsel asking when, when. You confirm?

Q. The question is when[.]

A. When I asked my wife that the children would return home, you mean formally with a document?

Q. No.

MR. BILALI: What's that? We have to clarify. This is the first time he ever did it? Any time whatsoever? We have to have a period of time. We have to justify. They are couple. This is vague. Help the deponent get an answer for your sake, your benefit.

Q. The question is did you ever at any time ask Ms. Vittori to return Emanuele Ermini and Daniele Ermini to Italy.

A. I'm sorry, counsel, allow me. I told you before that I never used the word "Italy." I always used the word "home" because in our family the word "home" means Velletri. There are no other meanings.  (*Id*. at 160:4-161:6)

\*\*\*

Q. Did you ever meet Marcello Russodivito?

MR. BILALI: Objection to the form, entirely vague, leading, ambiguous.

A. Can you be more precise with the question? (*Id*. 155:13-17)

\*\*\*

Q. Did you ever ask Ms. Vittori to send Emanuele Ermini and Daniele Ermini to Italy?

MR. BILALI: Objection.

A. Yes.

MR. BILALI: I just want to ask for clarification, actually, counsel. When you say "send," do you imply do you mean to return to Italy or the -- what's the meaning of send? (*Id*. at 158:22-159: 5).

Ermini also has evaded the most basic of document discovery requirements.  In fact, when asked to identify his email addresses, Ermini flatly refused, saying that he "would prefer not to."  *Id*. at 124:6-14.

In addition, Ermini has not produced any email messages from the key time period at

- 4 -

issue here.  In response to Vittori's requests for production, Ermini did produce approximately 1,200 pages of documents.  Press Decl. ¶ 2.  These include approximately 50 emails, many of which duplicate one another, dating from 2009, 2010, and 2012.  *Id*.  However, Ermini has not produced a single email that he sent or received in 2011, though it is certain they exist.  *Id*.  For example, non-party witness Marcello Russodivito produced, in response to a document subpoena, an email exchange he had with Ermini in June 2011, shortly before the family's arrival in the United States.  Ermini wrote that "we have also identified schools for the children" in New York and "I could sell the house in the 6-8 months after the move." Ermini Dep. Ex. 6 (attached as Ex. C to Press Decl.).  This email is absent from Ermini's production, along with many other emails that establish Ermini's 2011 intent to make the United States the family's habitual residence.

Because of Ermini's willful discovery misconduct, and to ensure a fair and efficient trial, the Court should issue an order (1) precluding Petitioner Emiliano Ermini from testifying at trial regarding subjects about which he refused to answer questions at his deposition, including his family's presence in Suffern, New York in 2011 or the circumstances under which they lived there, and any purported agreement that would have permitted him to return to his job in Italy, from which he resigned in 2011; (2) adopting an adverse inference that his 2011 email communications would rebut his claims in this case, based upon Ermini's refusal to provide electronic discovery.

## LEGAL STANDARD

"Even in the absence of a discovery order, a  court may impose sanctions on a party for misconduct in discovery under its inherent power to manage its own affairs." *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 106-07 (2d Cir. 2002) (citing *Chambers v.*

*NASCO, Inc.*, 501 U.S. 32, 43 (1991)).

Refusing to answer a deposition question is discovery misconduct, except "when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion [to terminate or limit] under Rule 30(d)(3)." Fed.R.Civ.P. 30(c)(2); *see also Hickman v. Taylor*, 329 U.S. 495, 507 (1947) ("the deposition-discovery rules are to be accorded a broad and liberal treatment" because "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation"). A federal district court's inherent power to impose sanctions for such misconduct can "include preclusion from taking particular positions or preclusion from offering particular evidence at trial," as the Court warned the parties to this action during a teleconference on December 19, 2012. Vittori Trans. 69:18-20 (attached as Ex. D to Press Decl.). *See also GMAC Bank v. HTFC Corp.*, 248 F.R.D. 182, 185 (E.D. Pa. 2008) (sanction may be imposed where "person's conduct is so egregious that it impedes, delays, or frustrates the fair examination of the deponent") (citations and internal quotation marks omitted).

Similarly, "[w]here, as here, the nature of the alleged breach of a discovery obligation is the non-production of evidence, a district court has broad discretion in fashioning an appropriate sanction, including . . . an adverse inference instruction." *Residential Funding*, 306 F.3d at 107. "An adverse inference is an equitable device that serves the remedial purpose, insofar as possible, of restoring the prejudiced party to the same position he would have been in absent the . . . failure to produce evidence, by the opposing party." *Id*. (citing *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir.1998) (internal quotations omitted)). *See also Daval Steel Products v. M/V Fakredine*, 951 F.2d 1357, 1365 (2d Cir. 1991) (where party failed to comply with discovery obligations relating to specific theory of liability, upholding sanction barring party from presenting evidence opposing that theory).

**ARGUMENT**

I. **Ermini Should Be Precluded from Testifying at Trial Regarding Subjects About Which He Willfully Refused to Answer Questions at His Deposition**

Ermini refused to answer questions on the following topics, and accordingly should be precluded from testifying on these topics at trial. *See Residential Funding*, 306 F.3d at 106-07; *GMAC Bank*, 248 F.R.D. at 185 (conduct that "impedes, delays, or frustrates the fair examination of the deponent" is sanctionable).

A. **Ermini Should Be Precluded From Testifying at Trial Regarding His Family's Presence in Suffern, New York in 2011 or the Circumstances Under Which They Lived There**

Under the Hague Convention on the Civil Aspects of the International Abduction of Children, Oct. 25, 1980 (the "Convention"), there can be no wrongful removal or retention of the children if the U.S. was the children's habitual residence at the relevant time. Compl. ¶¶ 6, 16; Convention art. 3. As explained in *Gitter v. Gitter*, 396 F.3d 124, 130 (2d Cir. 2005), "[a] petitioner cannot invoke the protection of the Hague Convention unless the child to whom the petition relates is 'habitually resident' in a State signatory to the Convention and has been removed to or retained in a different State." Where parents disagree about the place of habitual residence, "the court should inquire into [their] shared intent . . . at the latest time that their intent was shared." *Id*. at 134.

Ermini's intent to abandon Italy and make the United States his family's habitual residence is shown by, among other things, his August 7, 2011 arrival in the U.S. together with Vittori and the Children, and the family's subsequent rental and occupation of a home at 9 Chestnut Street in Suffern, New York. Despite the central importance of this topic, Ermini refused to provide any testimony regarding trips he made to the U.S. with Vittori in 2011. Ermini Trans. 154:5-9 (attached as Ex B to Press Decl.). Similarly, he would not testify

regarding the last time he traveled to the U.S. with Vittori and the Children.  *Id*. 154:16-21.

Ermini also improperly refused to answer any questions regarding the family's presence in

Suffern in 2011, as in the following exchanges:

> Q. Did you ever rent a residence in New York state?
>
> MR. BILALI: You can answer the question if you know it.
>
> A. Residence, do you mean that I took residence in the United States?
>
> Q. No, I mean by "residence" to refer to the kind of property, residential property as opposed to commercial property.
>
> A. I don't have property in the United States.
>
> Q. Did you ever rent a residence in New York State?
>
> MR. BILALI: You can answer the question if you understand it.
>
> A. Can you clarify?
>
> * * *
>
> Q. And did Emanuele Ermini attend school in the United States in 2011?
>
> MR. BILALI: Objection to form.  You can answer the question that the counsel just posed if you understand it and if you know about it.
>
> A. I understand the question, but I don't know the answer. (*Id*. 168:13-20)

*See also id*. 163:4-19.  Ermini further refused provide any testimony whatsoever relating to the

family home at 9 Chestnut Street in Suffern, even though his lawsuit is premised on this fact.

*See, e.g.,* Compl. ¶ 4; Compl. Ex. 8 (Ermini Application to the U.S. Dept. of State, July 26,

2012) at 3 ("Upon information and belief, my wife resides with my children at: 9 Chestnut

Street, Suffern, New York" ) (both attached as Ex. A to Press Decl.).  When asked about this

address, Ermini feigned ignorance of the meaning of terms such as "house" and "live" in order to

avoid providing testimony.

> Q. Is there a house that's located at 9 Chestnut Street in Suffren [sic]?

>MR. LAMURA: Objection to form.
>
>A. How do I know? I don't know.
>
>Q. Have you ever heard of the address 9 Chestnut Street in Suffren [sic]?
>
>MR. LAMURA: Objection. Objection, already asked and answered.
>
>A. The specific number, number 9 as the specific number?
>
>Q. Yes.
>
>A. I don't know. Chestnut is a street in Suffren [sic].
>
>Q. Have you ever been inside any house in Suffren [sic]?
>
>MR. LAMURA: Objection, vague. It's ambiguous, actually.
>
>A. Could you please specify: house, hotel, residence?
>
>Q. Have you ever been inside any residential building in Suffren [sic]?
>
>MR. LAMURA: Objection to form, vague, and asked and answered.
>
>A. As a residential, you mean also hotels?
>
>Q. In October 2011 where did Ms. Vittori live?
>
>MR. LAMURA: Objection, misstates a fact.
>
>A. What do you mean by "live"?

Ermini Trans. 166:16-167:20 (attached as Ex. B to Press Decl.). In light of his refusal to answer simple questions, Ermini should be barred from providing trial testimony his family's presence in Suffern, New York in 2011 or the circumstances under which they lived there. See *GMAC Bank v. HTFC Corp.*, 248 F.R.D. 182, 185 (E.D. Pa. 2008).

**B. Ermini Should Be Precluded from Testifying at Trial Regarding Any Purported Agreement That Would Have Permitted Him to Return to His Job in Italy, From Which He Resigned In 2011**

Ermini admittedly quit his job in Italy in December 2011 (*Id*. 67:8-20), strong evidence of his intent to abandon Italy and make the United States his family's habitual residence. In an effort to blunt this evidence, Ermini claimed that he had left his job only temporarily, claiming he had an arrangement with "Mr. Tortorella," his Italian boss, to permit Ermini to return to his job in Italy at will. *Id*. 102:3-106:24.

However, Ermini refused to answer any questions about this supposed arrangement's details. *See, e.g., id*. 105:21-24 ("Q. So even though you had an oral agreement with Mr. Tortorella, you did not ask him to keep the agreement? . . . A. I would have, in order to give you a meaning -- an answer with meaning, to explain you all the business of Mr. Tortorella, and I don't believe this is the proper place."); 106:12-24 (Q. " . . . you understood from Mr. Tortorella that you should not ask to come back because he would be unable to take you back? . . . . A. I am not in position to know what Mr. Tortorella thought.").

Ermini's responses were clearly part of a concerted strategy of obstructionism. For example, when Ermini responded directly to a question regarding where Mr. Tortorella worked ("he was one of the shareholders also of T Line"), he was sharply rebuked by his counsel ("You need to answer what you know, not what you think it is."). *Id*. 81:19, 81:20-21.

In light of his refusal to answer simple questions, Ermini should be barred from testifying regarding any purported agreement that would have permitted him to return to his job in Italy.

**II.   The Court Should Adopt an Adverse Inference Based Upon Ermini's Refusal to Provide Electronic Discovery**

Ermini also has failed to provide electronic discovery, refusing to disclose his email addresses and withholding all documents from the key year of 2011 from his email production.

Because the missing evidence is relevant, because Ermini "had an obligation to timely produce" it, and because Ermini acted with "a culpable state of mind," the Court should adopt an adverse inference the his 2011 email communications would rebut his claims in this case. *See Residential Funding*, 306 F.3d at 107. *See also Daval*, 951 F.2d at 1365 (where party failed to comply with discovery obligations relating to issue of alter ego liability, upholding sanction barring party from presenting evidence opposing that claim); *Burnett v. Venturi*, 903 F. Supp. 304 (N.D.N.Y. 1995) (failure to fully with obligation to produce audiotape was conduct sanctionable by preclusion of any testimony regarding erased conversation); *Oklahoma Federated Gold & Numismatics, Inc. v. Blodgett*, 24 F.3d 136 (10th Cir. 1994) (affirming evidence preclusion sanctions); *Avionic Co. v. General Dynamics Corp.*, 957 F.2d 555, 558 (8th Cir. 1992) (dismissal sanction upheld); *Prof'l Seminar Consultants, Inc. v. Sino Am. Tech. Exch. Council, Inc.*, 727 F.2d 1470, 1474 (9th Cir. 1984) (upholding default judgment as just and specifically related to the claim at issue).

It is important to have Ermini's email addresses, so as to assess his discovery responses and authenticate key documents. Nonetheless, Ermini flatly refused to identify his email addresses at the deposition, despite repeated requests. *Id*. 124:6-14 ("Q: . . . do you have an e-mail address currently? . . . A: Honestly, I have three of them. . . . Q: Please tell me what the addresses are. A: I would prefer not to[.]"); *id*. at 125:16-23 ("Q: [S]ince January 1st, 2010, have you used any e-mail addresses other than the three addresses that you just mentioned? . . . A: Sir, I definitely want to give all the answers, but . . . [.]"); *id*. 198:24-201:12, 204:21-210:2. At the close of the deposition, counsel for Vittori noted on the record that Ermini's failure to provide his email addresses could give rise to sanctions. *Id*. at 209:20-25. In the three weeks

since Ermini's deposition, his counsel has made no efforts to remedy this deliberate flouting of the discovery rules that apply to all parties.[5]

Ermini's counsel also violated document discovery rules, failing to produce documents from the time period at issue here. Vittori propounded comprehensive document requests upon Ermini on December 6 and 21, 2012 (attached as Exs. E, F to Press Decl.) In response, Ermini produced approximately 1,200 pages of documents on December 26, 2012 and an additional two pages on January 3, 2013. Press Decl. ¶ 2. These include approximately 50 emails, many of which duplicate one another, dating from 2009 through 2012. *Id*. However, Ermini has not produced a single email that he sent or received in 2011, though it is certain that such documents exist. *Id*. For example, non-party witness Marcello Russodivito produced, in response to a document subpoena, an email exchange he had with Ermini in June 2011, shortly before the family's arrival in the United States. There, Ermini notes that "we have also identified schools for the children" and "I could sell the house in the 6-8 months after the move." Ermini Dep. Ex. 6 (attached as Ex. C to Press Decl.). This document shows Ermini's intent to make the United States the family's habitual residence, but it is absent from Ermini's document production. Also, Russodivito produced an email from Ermini dated July 6, 2011 in which Ermini discussed their "agreement" that Ermini would acquire "51%" ownership of Russodivito's restaurant, located in Suffern, New York. Ermini Dep. Ex. 7 (attached as Ex. G to Press Decl.). The email was not produced by Ermini, in violation of his obligation to timely produce relevant documents, and with "a culpable state of mind."

---

[5] At the deposition, Ermini and his counsel made repeated and unsubstantiated allegations that Vittori or an agent of hers had gained unauthorized access to one or more of Ermini's email accounts, claiming this as justification for refusing to identify his email addresses. Ermini Trans. 124:13-125:11; 199:9-21; 204:21-205:5; 207:18-208:2 (attached as Ex. B to Press Decl.). However, Ermini made no effort to obtain from the Court an order protecting his email addresses from disclosure.

Consistent with precedent, the Court should adopt an adverse inference that Petitioner's 2011 email communications rebut his claims in this case, because he willfully refused to produce them.  *See Daval*, 951 F.2d at 1365; *Burnett*, 903 F. Supp. at 304 (failure to fully with obligation to produce audiotape was conduct sanctionable by preclusion of any testimony regarding erased conversation).

## CONCLUSION

For the foregoing reasons, Vittori respectfully requests that the Court grant her motion *in limine* for an order (1) precluding Petitioner Emiliano Ermini from testifying at trial regarding subjects about which he refused to answer questions at his deposition, including his family's presence in Suffern, New York in 2011 or the circumstances under which they lived there, and any purported agreement that would have permitted him to return to his job in Italy, from which he resigned in 2011; and (2) adopting an adverse inference that his 2011 email communications would rebut his claims in this case, based upon Ermini's refusal to provide electronic discovery, and granting such other and further relief as the Court deems just and proper.

Respectfully submitted,

Dated: New York, New York
       January 9, 2013

Wilmer Cutler Pickering Hale
 and Dorr LLP

  /s/ Jacob Press_____
Sanket J. Bulsara
Jacob Press
7 World Trade Center
250 Greenwich Street
New York, NY 10007
tel:  (212) 230-8800
fax:  (212) 230-8888

*Counsel for Respondent Viviana Vittori*