UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

|  |  |  |
|---|---|---|
| EMILIANO ERMINI, | ) ) ) | |
|  | ) | Civil Action No. 12-cv-06100 (LTS) (HJP) |
| Petitioner, | ) ) | |
| -against- | ) ) ) | |
| VIVIANA VITTORI, | ) ) ) | |
| Respondent. | ) ) | |

_____)

**PETITIONER PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Petitioner Emiliano Ermini ("**Petitioner**"), by counsel, hereby respectfully submits his proposed findings of fact and conclusions of law and states as follows:

**PROPOSED FINDINGS OF FACTS**

**I.   INTRODUCTION**

1.   This case came before this Court on August 8, 2012 by Petition to secure the immediate return of children wrongfully retained in the United States, and to ensure that rights of custody and of access under the laws of Italy are effectively respected in the United States.

2.   This Petition is brought pursuant to the Convention on the Civil Aspects of International Child Abduction, done at the Hague on October 25, 1980 ("**Convention**"), and the International Child Abduction Remedies Act ("**ICARA**").

3.   Petitioner alleges that Respondent, Viviana Vittori ("**Respondent**"), wrongfully retained his Children, Daniele Ermini and Emanuele Ermini (collectively, the "**Children**"), both habitual residents of Italy, in the United States.

4.   The parties with their Children took some short trips to the United States during the

period 2009 through 2011 in order to explore possible medical (body) treatments for Daniele, the youngest child, who in 2008 was diagnosed with autism. After each trip to the United States during that period, both parties along with their Children returned home to Italy. (*see* <u>Petitioner's Exhibit # 7</u> – Respondent's passport and US visa/visa stamps). In that period, Petitioner returned always first to Italy, then he was followed by Respondent with the children.

5.  However, in the last trip to the United States on or about November 15, 2011, contrary to the parties' prior agreement that Petitioner would go back home and Respondent with Children would follow Petitioner thereafter, Respondent abruptly refused to return the Children to Italy, and wrongfully retained the Children in the United States.

6.  Petitioner made several efforts and requests to Respondent for the immediate returning of the Children to Italy, but Respondent refused to do so. Respondent also refused to return the Children to Italy in violation of the joint custody orders of the Civil Court of Velletri (Italy) of September 20, 2012, being in contempt of the court (*see* Petitioner's Exhibit #25 – Italian Order dated September 20, 2012).

7.  Respondent is also in further contempt of court since she did not return the children to Italy, as stated by said Court's Order dated September 20, 2012 (*see* Petitioner's Exhibit #25 – Italian Order dated September 20, 2012).

## II.   BACKGROUND

8.  Petitioner and Respondent do not dispute the following material facts:[1]

a)  Petitioner is married to Respondent;

b)  Petitioner and Respondent are Italian citizens;

c)  Petitioner and Respondent are the parents of the Children;

d)  Children are Italian citizens;

e)  Daniele Ermini was born in Italy on May 18, 2005 and is a seven-year old little boy;

f)  Daniele has been diagnosed with autism.

g)  Emanuele Ermini was born in Italy on August 23, 2003, and is a nine-year old little boy.

---

[1] See section b., page 5 of Joint Pretrial Statement dated January 18, 2013.

9.      Emanuele Ermini has lived in Italy all his life.  He went to school in Italy, attended religious classes in Italian education system, has numerous best friends in Italy, attended acting classes and took swimming lessons there.  Most importantly, besides the Respondent, the entire family and his closest related relatives by blood, in both paternal and maternal sides, are in Italy.  Not less significant, his passion for soccer is originated and engraved from Italy, and his favorite soccer team is an Italian team.  (see Sealed Deposition of E.R. dated January 29, 2013, pg. 191, line 1-25, pg. 192, line 1-25, pg. 294 line 1-3).

10.      Daniele Ermini has lived all of his life in Italy.  Like his brother, besides the Respondent, the entire family and his closest related relatives by blood, in both paternal and maternal sides, are in Italy.  After diagnosed with autism, Daniele underwent in Italy medical (body) treatment and educational (rehabilitation or behavioral) treatment.

11.     In Italy, Daniele's medical treatment during the period 2008 – 2010 was conducted by Nicola Antonucci, M.D.  His medical treatment consisted of the Hyperbaric Oxygen Therapy (HBOT), chelation, immunoglobuline, integration in vitamin and minerals, other inflammatory and anti-viral drugs, intestinal bowl inflammation, secretin, oxytocin and others. (*see* Petitioner's Exhibits #10 & #15 – Italian Physician's Report & Medical Records).

12.     In Italy, Daniele's educational treatment during the period 2008 – 2010 was carried out by Dr. Sara Bassani, an Italian psychiatrist.  His treatment included rehabilitative cognitive and behavioral therapies through Applied Behavior Analysis (A.B.A.), among others.  Daniele saw gradual but steady improvement in pronouncing about 70 Italian words, about 20 Italian expression or sentences, and more than 150 words comprehension in Italian. Both parents attended *Pianeta Autismo*, which is an organization of parents and family members of children suffering from autism in order to teach them the methods and techniques for handling special care of the autistic children.  An important emphasis is given to relevant applicability of the Applied Behavior Analysis (A.B.A.), rehabilitative cognitive and behavioral therapies to autistic children.  Petitioner and Respondent never sought any educational treatment of Daniele elsewhere besides Italy due to the particular language (Italian) used to Daniele through the A.B.A (*see* trial testimonies of Nicola Antoniucci, MD & Petitioner Ermini dated February 28 and 29, 2013).

13. In order to do everything possible for Daniele, in 2009 Petitioner and Respondent explored other countries concerning potential autistic curable or improvement medical treatment opportunities, namely in Edinburgh, United Kingdom, where Daniele underwent the HBOT treatment sessions.

14. They also approached the United States for the same reason. As a result, Petitioner and Respondent along with their Children took short visits to the United States, more specifically, in the end of 2009; in the summer and towards the end 2010; in the end of 2010; and in the summer 2011 and in the end of 2011. (*see* Petitioner's Exhibit #7 – Respondent's Passport and US visa/visa stamps).

15. By their last short trip to the United States towards the end of 2011, Petitioner and Respondent, among others, had already decided that Daniele's medical treatment in the United States did not bring any positive result but only complications. Like before, together, Petitioner and Respondent decided that Petitioner would return to Italy the beginning of 2012, Respondent and the Children at the end of the Spring semester of 2012. Such timing was agreed by Petitioner and Respondent in the best interest for the Children; indeed, the Children could finish their academic scholastic year while still under a valid visa program. Such visa expired on May 15, 2012. (*see* trial testimony of Petitioner Ermini dated January 28 and 29, 2013; Petitioner's Exhibit#7 – Respondent's Passport and US visa/visa stamps)

16. Petitioner returned to Italy, on or about January 4, 2012, while Respondent with the Children were supposed to follow in May 2012. (*see* Petitioner's Ermini trial testimony dated January 28 and 29, 2013)

17. On or about February 9, 2012, Respondent, although Petitioner was in Italy since January 4th, 2012, filed a temporary restrictive order against Petitioner with the Family Court in Rockland County.

18. At the first hearing, on or about March 3, 2012, the Judge of the Family Court of Rockland County, Hon. Richardson-Mendelson, since Petitioner was in Italy, ordered daily visitation through skpye, from 4.00 p.m. to 4.30 p.m. with Respondent obligation to facilitate such visitation. Respondent disobeyed such order by disconnecting Petitioner's account from her Skype account connection on the ground that : "*she wanted it to cancel that*" (*see* Respondent's

Deposition dated December 19, 2012, pg. 132, line 20; Petitioner's Ermini trial testimony dated January 28 and 29, 2013, and Respondent's trial testimony dated January 28, 2013).

19.   On or about March 15, 2012, Respondent filed for a divorce with the Italian Civil Court of Velletri, Italy, requesting, among others, immediate judgment on sole custody, permanent order of protection for the children, permanent order of protection for Respondent.  The Italian Court of Velletri, with judgment and order dated May 12, 2012, denied all requests of Respondent based on lack of evidence and confirmed joint custody of Petitioner and Respondent of the Children.  Said judgment and order did establish a stay away order for only Respondent and Petitioner *see* Petitioner's Exhibit #4 – Italian Court Order granting joint-custody).

20.   On April 24, 2012, Respondent, notwithstanding Petitioner's request to return the Children to Italy, returned to Italy alone.  On April 27, 2012, she travelled again to the United States. On May 15, 2012, the US visas for the Children expired, but Respondent decided to remain in the United States along with her Children, unlawfully.

21.   On May 15, 2012, Petitioner through his Italian counsel sent to Respondent a formal letter requesting immediate return of the Children to Italy.  Respondent refused to comply (*see* Petitioner's Exhibit #5 – Letter to Respondent dated May 15, 2012).

22.   On August 8, 2012, Petitioner filed a Verified Complaint for the returning of the Children to Italy before this Court.

23.   On September 20, 2012, the Civil Court of Velletri, Italy, upon Petitioner's request, ordered Respondent to return the Children to Italy and assigned the Italian residential house to Respondent and the Children.  Once more, Respondent refused to comply. (*see* Petitioner's Exhibit #25 – Italian Order dated September 20, 2012).

24.   To date, Respondent has admitted that: (i) she and the Children remain unlawfully in the United States; (ii) they do not have social security numbers; (iii) she does not obtain a driver license or any American official identification document; (iv) neither she nor the Children have health insurance or medical care in the United States, while all of these are already and duly provided to her and the Children in Italy.  Respondent admitted that she still works for IKEA Italy, while in the United States she is unemployed.  Her educational level in Italy, a high school diploma, and her ability to communicate proficiently not in English but only in her native Italian

language, present an imminent risk to the Children current stay and proper care in the United States. In addition, she and the Children are living in a one bedroom apartment, together with a man named Pasquale Ruggiero, unemployed as Respondent in the United States, and the circumstances of such living arrangements are still unclear (s*ee* Respondent's trial testimony and cross-examination dated January 28 and 30).

25. It is a fact that Mr. Ruggiero: (i) walks around the apartment shirtless; (ii) assists Daniele to take daily showers; (iii) accompanies Daniele and Emanuele to and from school; (iv) takes them out to sports activities, eating venues; and, (v) even cooks for them. Here, without speaking about Respondent's real purpose to share an apartment, or a room, with Mr. Ruggiero, the psychological and emotional impact impose on two minor children, like Emanuele and Daniele, to live with a stranger, other than the biological father, in their premises, will have devastating and long-lasting effects on the Children. (see Petitioner's Exhibit #8 – Facebook page of P. Ruggiero; Respondent's trial testimony and cross examination dated January 28 and 30, respectively; and Emanuele Ermini's witness transcript dated January 29, 2013, pg. 198, line 5 and pg 199 line 1 to line 25).

26 Even today, notwithstanding several requests, Respondent refuses to return the Children to Italy, is in contempt of the Order of Visitation of the Family Court of Rockland County as well as the Italian Court Order of Velletri to return the Children to Italy.

## PROPOSED CONCLUSION OF LAW

27. Congress enacted the International Child Abduction Remedies Act (ICARA) to implement the Hague Convention, a treaty to which the United States and Italy are signatories. 42 U.S.C. § 11601(b)(1) (West 2001). The objectives of the Hague Convention are (i) to secure the prompt return of children wrongfully removed or retained in any Contracting State; and (ii) to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in other Contracting States. *Hague Convention on the Civil Aspects of International Child Abduction*, Oct. 25, 1980, art. 1 §§ a-b T.I.A.S. No. 11670, *available at* 1988 WL 411501. Furthermore, the Hague Convention seeks to restore the pre-abduction status-quo and to deter

parents from crossing borders in search of more sympathetic courts.

28. The Hague Convention and ICARA apply where a child has been retained from his habitual residence in breach of the petitioner's rights of custody. A petitioner establishes a prima facie case of wrongful retention by proving by a preponderance of the evidence that (i) the habitual residence of the child immediately before the date of the alleged wrongful retention was in the foreign country; (ii) the retention breached the petitioner's custody rights under the foreign country's law; and (iii) the petitioner exercised custody of the child at the time of the child's alleged retention. 42 U.S.C. at § 11603(e)(1)(A). A petitioner's custody rights may arise by operation of law, judicial or administrative decree, or by private agreement. *Hague Convention*, art. 3. Children who are wrongfully retained under the provisions of the Hague Convention shall be promptly returned unless one of the exceptions provided in the treaty applies. See 42 U.S.C. at § 11601(a)(4).[1]

29. This Court has proper jurisdiction over ICARA proceedings. Id. at § 11603(a). This Court has already held that the doctrine of abstention does not apply here. This court's jurisdiction, however, exists only to determine the merits of the abduction claim and not to consider the underlying custody dispute. *Hague Convention*, art. 19.

## II.   DISCUSSION

30. It is clear that the Children habitually resided in Italy prior to their retention in the United States. They have lived in Italy all their lives; went to school in Italy; attended religious classes there; and had their home in Italy. Therefore, in order to prevail, Petitioner must further demonstrate by a preponderance of the evidence that (i) Respondent's wrongful retention of the Children breached Petitioner's custody rights under Italian law; and (ii) Petitioner was exercising custody rights over Children at the time immediately before the wrongful retention. Petitioner has already met this burden.

31. By unilaterally retaining Children in the United States, Respondent breached Petitioner's custody rights under Italian law. The joint custody order from the Italian Court of Velletri of May 2012, as clarified by September 20, 2012 order, states that:

---

[1] It is for the Respondent to address these exceptions in any proposed findings of fact and conclusions of law that she files with the Court.

> *"Jointly entrusts their minor children, Emanuele and Daniele, to both parents, who will also be practicing parental authority over them . . . ."* and that *"The minor children are to live in the family home located in Velletri 13 Via Formellonzi [Italy], which is assigned to Vittori Viviana."* (see Petitioner's Exhibit #25 – Italian Order dated September 20, 2012).

32. There is also no doubt that Petitioner fully exercised his custody rights over the Children. Testimony at the evidentiary testimonies and written materials established that he fully participated in every significant aspect of the Children's lives except for Respondent's retention outside Italy. (*see* Petitioner's Exhibit#11 – Flight tickets; Petitioner's Exhibit #14 – family photos; Petitioner's Exhibit #20 – Skype conversations; Petitioner's Exhibit #17 – Electronic mails Ermini / Feingold; Petitioner's Exhibit#22 – Bank Statements and financial support)

## V.  CONCLUSION

33. Petitioner Ermini has met his burden under ICARA by establishing that (i) Children Daniele and Emanuele habitually resided in Italy prior to their wrongful retention in the United States on February 9, 2012; (ii) by retaining the Children, Respondent breached Italian custodial rights under Italian law; and (iii) Petitioner possessed custodial rights at the time of Respondent' wrongful retention of the Children in the United States.  The Children must therefore be promptly returned to Italy.

**IT IS ORDERED AND ADJUDGED THAT:**

1. The Petition for Return of Children is **GRANTED**.
2. The Children, Emanuele and Daniele Ermini, shall be immediately returned to Italy **FORTHWITH.**


Dated: February 14, 2013
       New York, New York

By: *[signature]*

Rocco Lamura, Esq.
TOSOLINI LAMURA RASILE & TONIUTTI LLP
70 West 36th Street 12th Floor
New York, NY 10018
Phone: 917-551-6532

*Counsels for Petitioner*

## **CERTIFICATE OF SERVICE**

As per agreement between counsels for service through electronic means, I hereby certify that a true and accurate copy of the foregoing was emailed to:

>Jacob Press, Esquire
>
>WILMER CUTLER PICKERING HALE AND DORR LLP
>
>7 World Trade Center
>
>250 Greenwich Street
>
>Phone: (212) 230-8800

counsel of record for Respondent, this 14th day of February, 2013.

Rocco Lamura, Esq.

TOSOLINI LAMURA RASILE & TONIUTTI LLP
70 West 36th Street 12th Floor
New York, NY 10018
Phone: 917-551-6532

*Counsels for Petitioner*