UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EMILIANO ERMINI, | ) |
|                     Petitioner, | ) Civil Action No. 12-cv-06100 (LTS) (HJP) |
| v. | ) |
| VIVIANA VITTORI, | ) |
|                     Respondent. | ) |

## RESPONDENT'S REPLY TO PETITIONER'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

Respondent Viviana Vittori hereby incorporates by reference her Proposed Findings of Fact ("Resp.'s FOF") [Docket No. 61] and Conclusions of Law ("Resp.'s COL") [Docket No. 62], and provides the additional proposed findings below in Reply to Petitioner Emiliano Ermini's Proposed Findings of Fact and Conclusions of Law ("Pet.'s FOF") [Docket No. 63]:[1]

### Introduction

Mr. Ermini's submission fails to demonstrate that Emanuele Ermini and Daniele Ermini should be returned to Italy, pursuant to the Convention on the Civil Aspects of International Child Abduction (the "Hague Convention"). None of the evidence presented in his submissions establishes that the children's habitual residence was Italy rather than the United States. Mr. Ermini has made a series of assertions that are either irrelevant (for example, regarding the children's ties to Italy in 2010, prior to their arrival in the United States) or unfounded (for

---

[1] Ms. Vittori's proposed findings were timely filed on February 13, 2013—fourteen days after January 30, 2012, the last day of the trial. [Docket Nos. 61, 62]. *See* December 3, 2012 Pre-Trial Scheduling Order at ¶ 8. [Docket No. 17]. Mr. Ermini filed his proposed findings on the February 14, 2013, one day late and following receipt of Ms. Vittori's filings. [Docket No. 63].

example, regarding supposed risks to the children from being raised by their mother and being cared-for by Mr. Ruggiero), or both. Having failed to satisfy his burden of proof or to demonstrate that any of Ms. Vittori's affirmative defenses are unavailable, Mr. Ermini is not entitled to any of the relief he seeks.

I. **Mr. Ermini Failed To Establish Italy Was The Habitual Residence Of Daniele and Emanuele.**

1. Mr. Ermini's argument that Daniele and Emanuele Ermini were habitual residents of Italy relies exclusively on evidence that predates their arrival in the United States. That Daniele and Emanuele were enrolled in Italian schools, have lived their entire lives in Velletri, and took religious classes and received medical treatment there—*see* Pet.'s FOF ¶¶ 9-10—merely summarizes their ties to Italy prior to August 2011 and before they moved to Suffern, New York. These facts do nothing to establish that, during the period of the allegedly wrongful retention (in 2012), the children's ties to Italy were so substantial that their habitual residence was not the United States. To the contrary, all of the children's activities that are attributed to Italy shifted to New York as of at least September 2011. *See* Resp.'s FOF ¶¶ 112, 125-143 (describing the children's life in Suffern, including academic success, extracurricular activities, and family and social life); Resp.'s COL ¶¶ 77-79 (describing successful medical treatment and therapy in Suffern, learning English).[2]

2. In this regard, Mr. Ermini ignores—and thereby makes no attempt to explain—the countless pieces of evidence indicating that he severed the ties with Italy that he now relies upon. *See, e.g., id.* at ¶¶ 18, 40-45 (Ermini negotiated to become part-owner of Suffern

---

[2] Mr. Ermini claims that "besides the Respondent, the entire family" of Emanuele and Daniele is in Italy. Pet's FOF ¶¶ 9, 10. This is incorrect. Ms. Vittori's cousins and other family members live in the United States. Resp.'s FOF ¶ 136. The trial evidence demonstrates that these family members have created a strong family life for the children. *Id.* at ¶¶ 136-138.

restaurant, placed the family house in Italy on the market, married for immigration purposes, quit his job in Italy, left his children in the United States, signed a one-year lease in Suffern, enrolled his children in school in Suffern).  In addition, Mr. Ermini's various statements in 2011 and 2012—which are probative of his and Ms. Vittori's intent to abandon Italy—are entirely inconsistent with the position that he now advances.  *See, e.g.,* Resp.'s FOF ¶¶ 61 ("I am about to move to the United States"), 105 ("we are also considering the idea of moving to New York"), 116 (planning to ship "everything" to United States).

       3.     There is also nothing in Mr. Ermini's submission to demonstrate the existence of an "agreement" with Ms. Vittori that the children were to be returned to Italy in May 2012.  Pet.'s FOF ¶¶ 15-16.  There never was such an agreement.  *See* Resp.'s COL ¶¶ 47-49.  Mr. Ermini's inconsistent positions about when the alleged wrongful retention took place also suggest that no agreement with Ms. Vittori ever existed.  *See id*. at ¶¶ 22.  Mr. Ermini's shifting accounts of the timing of the allegedly wrongful retention was evident in his post-trial submission.  *Compare* Pet.'s FOF ¶ 5 ("[I]n the last trip to the United States on or about November 15, 2011 . . . Respondent abruptly refused to return the Children to Italy, and wrongfully retained the Children in the United States") *with id*. at ¶ 33 ("Daniele and Emanuele habitually resided in Italy prior to their wrongful retention in the United States on February 9, 2012") *and id.* at ¶ 20 ("On May 15, 2012 . . . Respondent decided to remain in the United States along with her Children . . . .").

**II.**     **Mr. Ermini's Claims About Risks Of Living In The United States Are Baseless.**

       4.     Though never attempting to deny the various acts of domestic violence he committed—which establish a grave risk of returning the children to Italy (Resp.'s COL ¶¶ 80-

111)—Mr. Ermini argues that there are risks from keeping the children in the United States. His claims are unsupported by the record evidence.

5.   *First*, Mr. Ermini attempts to impugn Mr. Ruggiero by suggesting improper behavior, including that Mr. Ruggiero "assists Daniele to take daily showers." Pet.'s FOF ¶ 25. There is nothing to support this assertion, and the evidence is to the contrary. *See* Tr. at 374:22-375:1 (Vittori) ("Q. Does Mr. Ruggiero help Daniele to take a shower in the house? . . . A. No."); *see also* Resp.'s COL ¶ 137 n. 15. In fact, the unrebutted evidence is that Mr. Ruggiero has helped to create a stable home for the children. Resp.'s FOF ¶ 125-43.

6.   *Second*, Mr. Ermini also asserts that, "to live with a stranger, other than the biological father, in their premises, will have devastating and long-lasting effects on the Children." Pet.'s FOF ¶ 25. There is no evidence for this claim, nor is there any reasonable basis to infer that taking children to baseball games and cooking dinner for them is harmful. Mr. Ruggiero, far from being "a stranger," was shown to be an effective caretaker of Emanuele and Daniele, and a positive presence in their lives. *See* Resp.'s FOF ¶¶ 125-29, 140-42. Mr. Ermini's claim is undermined by the fact that—prior to this litigation—he approved of Mr. Ruggiero becoming a member of the household and told Mr. Ruggiero that he appreciated how Mr. Ruggiero took care of Daniele and Emanuele. *Id*. at ¶ 129 (*citing* Ex. OO (March 2012 Email from Ermini to Ruggiero) at VIT 2479 ("I really appreciate how sweet you are with my kids.")).

7.   *Third,* Mr. Ermini argues that Ms. Vittori's level of education and language abilities "present an imminent risk to the Children [sic] current stay and proper care in the United States." Pet.'s FOF ¶ 24. Mr. Ermini never explains the basis for this conclusory allegation, and the record establishes that, due to Ms. Vittori's care for and attention to her children, Emanuele

4

and Daniele are thriving in the United States and have overcome any language barriers by learning English.  Resp.'s FOF ¶¶ 125-143 (describing Emanuele and Daniele's life in the United States), 132 (Emanuele's fluency in English), 186-187 (Daniele's English almost equal to his Italian); Resp.'s COL ¶¶ 78-79, 124, 136.

### III. Mr. Ermini's Claims About Daniele's Autism Treatments In The United States Have No Merit.

8. Mr. Ermini  suggests that Daniele received adequate treatment in Italy and the autism therapy he now receives is ineffective.  As with his arguments about habitual residence, Mr. Ermini's claims about Daniele's autism treatments in Italy focus on events prior to 2011.  *See, e.g.*, Pet.'s FOF  ¶ 11 ("Daniele's autism treatment during the period 2008 – 2010").  Mr. Ermini's expert, Dr. Antonucci, has not examined or seen Daniele since May 2010, and Mr. Ermini offered no testimony or other evidence indicating that Daniele's care in the United States was anything but—as Dr. Fiorile explained—exemplary.  Resp.'s FOF ¶ 37 (dates of Dr. Antonucci treatment); *id*. at ¶¶ 177-87 (United States treatment outcomes).

9. Furthermore, the evidence about Daniele's treatment in Italy is either irrelevant (because it significantly predates the current treatment regimen) or cannot now be considered (because it was not admitted at trial).  For example, Mr. Ermini asserts that there was "gradual but steady improvement" in Daniele's language skills from 2008 to 2010, citing to "trial testimonies of Nicola Antoniucci [sic], MD & Petitioner Ermini dated February 28 and 29 [sic], 2013."  Pet.'s FOF ¶ 12.  Mr. Ermini provided no such testimony, and Dr. Antonucci was precluded from doing so, because his opinions were not properly disclosed prior to trial.  Tr. at

126:14-128:20 (Antonucci).[3]  In reality, Daniele was essentially "stagnant" while in Italy, because he did not have access to trained instructors or treatment, and it was this lack of improvement that prompted Mr. Ermini and Ms. Vittori to move to the United States.  *See* Resp.'s FOF ¶¶ 55-58, 62-74.

**IV.    Mr. Ermini's Reliance On Italian Court Orders Is Misplaced.**

10.    Mr. Ermini claims that "Petitioner's custody rights under Italian law" were established by "[t]he joint custody order from the Italian court of Velletri of May 2012, as clarified by September 20, 2012 order."  Pet.'s FOF ¶ 31.  The May 2012 order was never mentioned at trial or introduced into evidence.  In any event, like the September order, the May 2012 order is irrelevant.

11.    To assess a claim of wrongful removal or retention, the Hague Convention examines custody rights as they existed "immediately before the removal or retention."  Hague Convention, art. 3(a).  The allegedly wrongful retention of Daniele and Emanuele occurred prior to May 2012.  Resp.'s COL ¶ 22.  Therefore, the May and September orders are irrelevant as to whether a wrongful retention occurred.  *Id*. at ¶¶ 52-59.  In addition, because the Italian orders post-date the wrongful retention period, they are not probative of whether the children's habitual residence prior to May 2012 was Italy.

12.    Even if credited, the Italian orders could only establish Mr. Ermini's custodial rights under Italian law.  Whether he had such rights is not an issue, because Emanuele and Daniele were habitual residents of the United States at the time of their alleged wrongful retention.  *See Mozes v. Mozes*, 239 F.3d 1067, 1084 (9th Cir. 2001) (if "habitual residence had

---

[3] Mr. Ermini also discusses treatment Daniele received from a "Dr. Sara Bassani" in Italy between 2008 and 2010.  Pet.'s FOF ¶ 12.  Dr. Bassani was never mentioned at trial, and there is no evidence about her treatment of Daniele.

shifted to the United States" by the date of retention, "the case should end there," without deciding the parties' custody rights under foreign law). If any court were to enforce these Italian court orders, it would be the Rockland County Family Court, which has already exercised jurisdiction and would resolve any custody disputes, once this litigation is resolved, and the stay on that proceeding is lifted. *See Prinz v. Faso*, No. 03-CV-6653T, 2004 WL 1071761, at *6 (W.D.N.Y. May 12, 2004) (holding that child's removal from Germany to New York was not wrongful, and thereby finding that the "underlying issue of . . . custody" should be decided in the pending New York state court proceedings).[4]

Dated: New York, New York
February 20, 2013

Respectfully submitted,

Wilmer Cutler Pickering Hale
and Dorr LLP

_____
Sanket J. Bulsara
Jacob Press
Tamar Kaplan-Marans

7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel.: (212) 230-8800
Fax: (212) 230-8888
E-Mail:
Sanket.Bulsara@wilmerhale.com
Jacob.Press@wilmerhale.com
Tamar.Kaplan-Marans@wilmerhale.com

*Counsel for Respondent Viviana Vittori*

---

[4] The Rockland Court will be guided by the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), and it would likely give no weight to the Italian orders, because the Italian courts lacked jurisdiction to issue them. Resp.'s COL ¶¶ 146-151.