UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EMILIANO ERMINI, | ) |
| | ) |
| Petitioner, | ) Civil Action No. 12-cv-06100 (LTS) (HJP) |
| | ) |
| v. | ) |
| | ) |
| VIVIANA VITTORI, | ) |
| | ) |
| Respondent. | ) |

**PETITIONER'S REPLY TO RESPONDENT'S PROPOSED
FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Petitioner Emiliano Ermini hereby incorporates by reference his Proposed Findings of Fact and Conclusions of Law ("Pet.'s FOF"), and provides the additional proposed findings below in Reply to Respondent Viviana Vittori's Proposed Findings of Fact ("Resp.'s FOF") [Docket No. 61] and Conclusions of Law ("Resp.'s COL") [Docket No. 62]:

**Introduction**

1.      Pursuant to the Convention on the Civil Aspects of International Child Abduction, done at the Hague on October 25, 1980, and the International Child Abduction Remedies Act, Mrs. Vittori's submission fails to demonstrate the Respondent's affirmative defenses that (i) Mr. Ermini either subjectively consented to, or acquiesced in, the retention in the United States of Emanuele and Daniele Ermini; or that (ii) by clear and convincing evidence there is a grave risk that the children's return would expose them to physical or psychological harm or otherwise

1

place the children in an intolerable situation.  Further, Respondent failed to demonstrate that the Italian court(s) are either unable or unwilling to adequately protect Emanuele and Daniele Ermini from the alleged risk of harm or intolerable situation.

2.      In addition, Mrs. Vittori fails to prove that (i) prior to the wrongful retention in the United States, Emanuele and Daniele were habitually resident in Italy; (ii) the retention was in breach of custody rights of Mr. Ermini under Italian law; and (iii) Mr. Ermini was actually exercising custody rights at the time of the wrongful retention in the United States.

3.      Petitioner established by a preponderance of the evidence that the retention of Emanuele and Daniele in the United States were "wrongful", and Respondent failed to demonstrate any of her affirmative defenses.  Because the affirmative defenses are narrowly construed a trial court still retains the discretion to order Emanuele and Daniele Ermini's return to Italy, even where such a defense has been accredited.

4.      Having failed to satisfy any of her affirmative defenses, Mr. Ermini is entitled to his relief sought before this Court, including the return of Emanuele and Daniele back home to Italy and other sought reliefs, as this Court deems necessary.

**I.      Mrs. Vittori Failed To Show Mr. Ermini Either Subjectively Consented to, or Acquiesced in, the Retention of Emanuele and Daniele in the United States**

5.      There is no evidence under which Mrs. Vittori can show that Mr. Ermini consented or acquiesced the retention of Emanuele and Daniele in the United States.  Though similar in principle, consent and acquiescence are distinguishable.

6.      The consent defense involves Mr. Ermini's conduct prior to the contested retention in the United States, while acquiescence addresses whether Mr. Ermini subsequently agreed to or accepted the retention in the United States. When the defense of consent is raised, the trial court

must examine the nature and scope of Petitioner's consent and any conditions or limitations. Where party exceeds the scope of any prior consent given, that consent will be deemed revoked upon express communication of the objecting party's revocation of consent, and may give rise to a claim for wrongful retention. Analysis of an "acquiescence" defense is more focused, and requires proof of an act or statement with the requisite formality or a consistent attitude of acquiescence over a significant period of time.

## II.     Mrs. Vittori Failed To Show Grave Risk or Harm

7.      Mrs. Vittori failed to show by clear and convincing evidence that there is a grave risk that Daniele and Emanuele's return to Italy would expose them to physical or psychological harm or otherwise place them in an intolerable situation.

8.      Mrs. Vittori also failed to demonstrate that the Italian court(s) are either unable or unwilling to adequately protect Emanuele and Daniele from the alleged risk of harm or intolerable situation. Mrs. Vittori already testified during the trial that she filed the divorce papers with the Italian court, has attended pending divorce proceeding in the Italian court, which among others, will decide in issues of child custody and child support.

## III.    Mrs. Vittori's Failed To Prove That Daniele and Emanuele's Habitual Residence is not Italy

9.      Mrs. Vittori admits that she is born, raised and educated in Italy. She also admits that she still works in Italy, while physically remains unlawfully in the United States. There is also already established that Daniele and Emanuele were born in Italy, educated in Italy, have almost all of their relatives in Italy. In particular, Emanuele in his school in Italy, attended religious classes, something which he lacks in the United States. The fact that Emanuele made friends in

the United States and went to school, also, does not mean anything in order to establish his residence.

10. This because during the short period of time in which Mr. Ermini and Mrs. Vittori agreed to be in the United States, it is logical for children of Emanuele's age to make friends or even like the United States.

11. These facts establish that during the period of the wrongful retention in the United States, early 2012, the children's ties to Italy remained substantial that their habitual residence was not the United States but Italy.

**IV.    Mrs. Vittori Failed to Demonstrate the Clear Intention of Daniele's Autistic Treatment in the United States**

12. Mr. Ermini and Mrs. Vittori approached Daniele's autism treatment in two levels: medical (body) treatments and education (rehabilitation) treatments.

13. In Italy, for the medical treatments, Daniele was under the care and supervision of Dr. Nicola Antonucci who treated Daniele almost from the start of his diagnose (2008) until 2010. Under Dr. Antonucci's care, Daniele did Hyperbaric Oxygen Therapy (HBOT), chelation, immunoglobuline, integration in vitamin and mineral, other inflammatory and anti-viral drugs, intestinal bowl inflammation, "sensory learning" and "neurofeedback".

14. In Italy, for education (rehabilitation) treatment, Daniele was under the care of Dr. Claudia Lerz during the period 2008 – 2010.  Under her supervision, Daniele underwent Applied Behavior Analysis (A.B.A.) in Italian language and within Italian environment.  Daniele made gradual but steady improvement.

15.     The fact of the matter is that Mr. Ermini and Mrs. Vittori decided to come to the United States to explore opportunities for medical (body) treatment and not for education (rehabilitation) treatment because the latter was bringing already improvement to Daniele's autism.

16.     Mrs. Vittori claimed that Daniele was under the medical treatment from Dr. Feingold in the United States, but to date Mr. Ermini is not aware of any therapy, medication or alike Dr. Feingold is putting Daniele.  When Mrs. Vittori was asked during the trial, she testified that Daniele has taken "secretin" and "oxytocin spray" but these two treatments were and are still available in Italy!  Dr. Feingold has not provided any report to date which can show whether Daniele has any improvements about his autism.  The fact that she failed to testify in this Court speaks for itself.

17.     The fact that Mrs. Vittori brought to testify in the trial Dr. Carol Fiorile, who is not a certified physician nor has she ever treated Daniele about his autism, gives her testimony worthless weight from a medical point of view, which was the very reason Mr. Ermini and Mrs. Vittori decided to explore medical treatment for Daniele in the United States.

18.     Dr. Fiorile's knowledge about Daniele was based on third party telephone calls and brief visual observations.

19.     It is false what Mrs. Vittori's claim that "almost none of the treatments were covered by the Italian national health insurance … doctors gave no or grossly inadequate advice regarding ABA ("Applied Behavioral Analysis") … the people who were available to deliver ABA were grossly underqualified."  See Resp.'s FOF 35.

20.     Italian health care is free and available to all Italians.  This includes Daniele's treatment of autism.  Dr. Claudia Lerz was Daniele's educational (rehabilitation) physician from 2008 through 2010.  She is fully trained, educated and qualified to provide to Daniele the ABA.

It is false what Mrs. Vittori claims that "[D]despite Ms. Vittori's extraordinary efforts, the therapy she provided did not help Daniele, because she was not trained to provide it effectively." See Resp.s FOF 55.  Both Mr. Ermini and Mrs. Vittori put their best efforts to find a cure for little Daniele.  Under the guidance of Dr. Claudia Lerz and Dr. Sara Bassani in Italy they attended Pianetta Autismo (Association of Autism) which is an equivalent of BOCES organization in the United States.  Both parents were in constant educational and learning methods that parents or relatives need to adopt in communicating with autistic children.

**V.     Respondent failed to prove that Suffern is the new home for Daniele and Emanuele**

21.    Respondent admitted in her proposed findings of fact and conclusions of law what seems to be an irresponsible, unrealistic, and highly prejudicial to the best interest of the children, argument.

22.    This argument, has spelled out in such paper filed with this Court, regards the new home and family she allegedly was able to build with a man named Pasquale Ruggiero, a man about 15 years younger than Mrs. Vittori, illegal as well in this country.

23.    She is now, together with Mr. Ruggero and the children, although she had assigned the family home of two bedroom in Velletri by the Italian Judge Order of September 20, 2012 (Exhibit 25TH of Petitioner Exhibit List) in a one bedroom apartment of about 600 square feet, with no room other than the living room for the children and one room for her and Mr. Ruggero.

24.    Again, in this allegedly new family, Mrs. Vittori let Mr. Ruggero take showers to Daniele.

25.    Again and once more, she, Vittori, let Mr. Ruggero alone with the children in the house. Mr. Ruggero, a man of 24 years old!

26.     Again, in this alleged new life in America, Mrs. Vittori had the children became illegal under immigration law.  Children, Daniele and Emanuele will never be able to become legal and access to the tremendous benefits that America offers.  On the contrary, they face, on daily bases, irremediable deportation.

27.     Again, in this alleged new life in America, Daniele will never be able to qualify for medical insurance.  Indeed, notwithstanding his medical condition, he will not even been able to apply for a social security number.

28.     Again, in this alleged new life in America, Emanuele will never have the pleasure of driving a car with a valid driver license. Once more, he will not even been able to apply for a social security number.

29.     Again, Daniele and Emanuele, at school, in Suffern, every day, every second, still face and will face the tremendous experience of being suddenly deported to Italy.

30.     And yet, after all of the above, Respondent is asserting that: Daniele and Emanuele are settled in the United States, and sure, she is not even able to assert this statement in English, but she needs an interpreter.

31.     Emanuele is Italian. Daniele is Italian.

32.     The so called uncle, Mr. Tempesta, is not even an uncle.  At trial, on the stand, he stated they call me uncle.  He is cousin in forth degree.  No other relatives or close relatives are in the United States.  Ironically, if Respondent is visited by a close relative, such relative can not even stay temporarily in the apartment, unless she sleeps in the living room with the children.

33.     Emanuele, in his testimony, was not even able to remember the last names of his friends in the United States, while, being asked, he gave immediately full name of his Italian friends.  He is fan of Napoli (Naples) an Italian soccer team.

34. In addition, Daniele, at the same doctor Fiorile appointment for expert report, being asked, the only word that he stated was: *Frullato* (Exhibit 31 of Petitioner Exhibit List marked at trial).

## VI. Respondent alleged pattern of abuse

35. Mrs. Vittori stated in her trial testimony: He - Mr. Ermini - said he was going to kill us all.

36. He locked the doors of the house and went to the gas stove.

37. Being asked at trial, Mrs. Vittori further admitted that, the same day, she left the house and slept for three nights in hotel. She, however, left the children with such dangerous man, a man that just verbally treated Respondent to kill the entire family.

38. Either she did not care about the children or Mr. Ermini did not behave in the way described by Mrs. Vittori.

39. Again, lack of credibility arises when we see the chain of events. December 28, 2011, was the alleged physical abuse - for which, the Criminal Justice Court of Suffern agreed to a plea guilty of harassment in second degree with no touching - but the reports to the local authorities are dated February 9, 2012.

40. Mr. Ermini, in agreement with Mrs. Vittori, returned to Italy on January 4, 2012. It is more credible to assume that all was designed by Respondent and Mr. Ruggero to keep Mr. Ermini far from the children.

41. The Italian Court of Velletri, with Order of May 12, 2012, the only Court being asked, stated: there are not proofs of domestic violence.

42. In Rockland County Family Court, Petitioner and Respondent agreed on a temporary order of Protection of one year with no findings, subject to any order - also Italian - already in force.

43. On the contrary, Respondent believes she above the law.

44. She is in contempt of the Italian Court Order for visitation and returning of the children to Italy, as well the Rockland County Family Court Order of Visitation.

**VII.   Agreement to return children to Italy**

Not only Petitioner showed and introduced flight tickets for the children bought far in advance to this action, but also Respondent, admitted, in her trial testimony, an oral agreement reached with Petitioner, right before January 3, 2012, that she would return the children to Italy.

She did not do that. She simply used our judicial system as a forum shopping in order to create a new life with a new man, Mr. Ruggero, and unlawfully retain the children in the United States.

Respectfully submitted.

Dated: February 20, 2013

    New York, New York

By: *Rocco Lamura* (signature)

Rocco Lamura, Esq.
TOSOLINI LAMURA RASILE & TONIUTTI LLP
70 West 36th Street 12th Floor
New York, NY 10018
Phone: 917-551-6532

*Counsels for Petitioner*

## **CERTIFICATE OF SERVICE**

As per agreement between counsels for service through electronic means, I hereby certify that a true and accurate copy of the foregoing was emailed to:

>Jacob Press, Esquire
>
>WILMER CUTLER PICKERING HALE AND DORR LLP
>
>7 World Trade Center
>
>250 Greenwich Street
>
>Phone: (212) 230-8800

counsel of record for Respondent, this 20th day of February, 2013.

*[signature]*

Rocco Lamura, Esq.

TOSOLINI LAMURA RASILE & TONIUTTI LLP
70 West 36th Street 12th Floor
New York, NY 10018
Phone: 917-551-6532

*Counsels for Petitioner*