UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | )  |  |
|---|---|---|
| EMILIANO ERMINI, | ) | |
| | ) | Civil Action No. 12-cv-06100 (LTS) (HJP) |
| Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| VIVIANA VITTORI, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

## RESPONDENT VIVIANA VITTORI'S OBJECTIONS TO JUDICIAL NOTICE OF ITALIAN CIVIL CODE PROVISIONS

Respondent Viviana Vittori respectfully submits this memorandum of law in response to the Court's March 29, 2013 order to show cause [Docket No. 68] (the "Order"), which directed the parties to file any objections to the Court's taking notice of Articles 144 and 316 of the Italian Civil Code of Law (the "Italian Statutes").[1]  Ms. Vittori does not object to the Court's taking notice of the Italian Statutes, except to the extent the Italian Statutes may be used to suggest, incorrectly, that Ms. Vittori has breached Mr. Ermini's custody rights under Italian law. As further explained below, Ms. Vittori also objects to the Court's citation of *Armiliato v. Zaric-Armiliato*, 169 F. Supp. 2d 230 (S.D.N.Y. 2001).

**I.    Ms. Vittori Does Not Object To The Court's Taking Notice Of The Italian Statutes**

Ms. Vittori does not object to the Court's taking notice of the Italian Statutes, subject to the caveats set forth in Section II below.  The Italian Statutes are correct statements of Italian law, and "[i]n determining foreign law, the court may consider any relevant material or source." Fed. R. Civ. P. 44.1.

---

[1] English translations of relevant provisions of the Italian Civil Code are attached as Exhibit A.

In addition, if the Court finds that Italy is the country of habitual residence, it may take notice of Italian law pursuant to Article 14 of the Hague Convention, which authorizes the Court to "take notice directly of the law of . . . the State of the habitual residence of the child, without recourse to the specific procedures for the proof of that law or for the recognition of foreign decisions which would otherwise be applicable." *See, e.g., Feder v. Evans-Feder*, 63 F.3d 217, 225 (3d Cir. 1995) (petitioner's "custody rights are determined by Australia's Family Law Act 1975, of which we may 'take notice directly'").[2]

However, while the Court may take notice of the Italian Statutes, it is not required to do so.  It was Mr. Ermini's burden to show a breach of custody rights under Italian law, but he presented the Court with "no evidence" on this fundamental element on which he bears the burden of proof, so his petition should be denied on that basis.  Order at 1; *see, e.g.*, *In re Application of Adan*, 437 F.3d 381, 392-94 (3d Cir. 2006) (vacating district court's return order where the "District Court erred in finding that [petitioner] satisfied his burden of proof as to his custody rights under Argentine law").

## II. Ms. Vittori Objects To The Court's Taking Notice Of Italian Law To The Extent It Is Being Used to Suggest Ms. Vittori Breached Mr. Ermini's Custody Rights

Ms. Vittori objects to the Court's taking notice of Italian law to the extent the noticed provisions may be used to suggest that she has breached Mr. Ermini's custody rights.  As explained below, Ms. Vittori has complied with the Italian Statutes, and Mr. Ermini's custodial rights have not been breached.

---

[2] Ms. Vittori, of course, maintains that her children have been habitual residents of the United States at all relevant times.  *See* Respondent's Proposed Conclusions of Law [Docket No. 62] ("Resp.'s COL") ¶¶ 9-59.

Under Italian law, "[p]arental authority is exercised by both parents."  Civil Code art. 155.[3]  Thus, "[t]he spouses agree between them the pattern of family life and fix the residence of the family according to the requirements of both and to those prevailing for the family."  Civil Code art. 144.  "Each of the spouses has the authority to implement the agreed pattern."  *Id*.

Ms. Vittori and Mr. Ermini jointly agreed that it was in the best interest of their children to fix their residence in the United States, where Daniele would have unique access to appropriate treatment for his severe autism.  Respondent's Proposed Findings of Fact ("Resp.'s FOF") [Docket No. 61] ¶¶ 56-119; Resp.'s COL ¶¶ 18-21.  Ms. Vittori implemented this plan ("the agreed pattern")—and was doing so at the time of the alleged wrongful retention in 2012—which she was authorized to do pursuant to Article 144.  *See* Resp.'s FOF ¶¶ 125-143, 177-187; Civil Code art. 144.

Under Article 155 of the Italian Civil Code, where parents disagree regarding a decision "of major interest for the children on instruction, education, and health," it should be submitted to a judge to resolve.  *See* Civil Code art. 155; *see also* Civil Code art. 316 (where parents disagree "on questions of particular importance," the parent who objects to the status quo "can apply without formalities to the judge," who is authorized to "suggest the decisions which he deems most useful," upon consideration of "the interest of the child and of family unity"); Salvatore Patti et al., *Parental Responsibilities, National Report: Italy* (Commission on European Family Law, undated) (*available at* http://ceflonline.net/parental-responsibility-reports-by-jurisdiction) (attached as Exhibit B) at 24 ("If the parental responsibilities holders cannot agree on an issue, how is the dispute resolved? . . . . "Art. 316 Italian CC describes the exercise of the

---

[3] All translations of the Italian Civil Code herein are taken from *The Italian Civil Code* (Susanna Beltramo trans., 2012).

3

parental responsibilities . . . [I]f the issues are of major importance . . . both parents can petition the judge . . . ."), 25, 35.

Mr. Ermini submitted the dispute over the children's residence to the Italian courts, which have examined and rejected his position. In an April 5, 2013 order ("April 5 Order") (attached hereto as Exhibit C), the Court of Appeals of Rome found that the removal and retention of the children in the United States "had been decided jointly by the parents due to the possibility of having in [the United States] the treatments deemed most appropriate for the youngest son Daniele." Ex. C at 3.[4] This "was not a matter of a unilateral decision made by Vittori who intended to take the children away from their father, but at least initially, the two had agreed on living in the U.S. for that purpose [of seeking treatments for Daniele]." *Id.* at 3.

In addition, because Article 144 requires the agreement of both parents to change a child's residence, Ms. Vittori did not violate Italian law. In *Jenkins v. Jenkins*, 569 F.3d 549 (6th Cir. 2009), the Sixth Circuit addressed a similar fact pattern and found that a parent's unilateral decision to disrupt a family's new habitual residence precludes a finding of wrongful retention. There, parents Hofit and Avraham relocated with their child Orin from Israel to Ohio for a period of at least three years. *Id*. at 552. Five months after arriving in Ohio, the parents' relationship broke down, Hofit returned to Israel alone, and Avraham retained Orin in Ohio. *Id*. at 553. Once she was back in Israel, Hofit filed a petition for Orin's return. *Id*. On appeal, the *Jenkins* court affirmed the holding of the district court that there was no wrongful retention. *Id*. at 555.

---

[4] Other aspects of the April 5 Order—including the fact that it awards sole custody of their children to Ms. Vittori and vacates the September 20, 2012 Order on which Mr. Ermini bases much of his case—are discussed in a letter being submitted to the Court contemporaneously herewith.

4

The key consideration was that, under the law of both Israel and Ohio, the parents of a child jointly determine the child's residence.[5] Avraham therefore "had an equal right with Hofit to Orin's custody" and he was within his rights to refuse to comply with her demand that the child relocate. *Id*. at 555. As the court explained:

> The family voluntarily left Israel to start a new life in the United States, and the record gives no indication that Hofit was anything other than a willing collaborator in that decision. In fact, testimony before the district court established that the final decision to move from Israel was made in significant part based on Hofit's desire to distance the family from her parents after a rift in her relationship with her mother. She then disrupted the family's newly established habitual residence by "unilaterally deciding" to return to Israel after causing a rift in her relationship with her husband.

*Id*. at 555, n.4.

Here, too, Mr. Ermini and Ms. Vittori collaborated in the relocation of their children to the United States for an extended period of time. Resp.'s FOF ¶¶ 56-119; Resp.'s COL ¶¶ 18-21. After several months, Mr. Ermini "caus[ed] a rift" in his relationship with Ms. Vittori by assaulting her. Resp.'s FOF ¶¶ 147-153. He then decided to return to Italy and demanded that the children return as well. *Id*. at ¶¶ 159-164. Meanwhile, Ms. Vittori acted consistent with their consensual plan. *Id*. at ¶¶ 125-143, 177-187. Because Italian law—like that of Israel and Ohio—requires the agreement of both parents in order to change a child's residence, and because there has been no court order to the contrary, Ms. Vittori's conduct did not violate either Article 144 or 316. *See* Civil Code art. 155; *cf. Karkkainen v. Kovalchuk*, 445 F.3d 280, 297 (3d Cir.

---

[5] The *Jenkins* court held that "the child custody laws of Israel and Ohio appear to be functionally equivalent." *Jenkins*, 569 F.3d at 554. "Under Israeli law, parents are joint guardians of their child, and guardianship includes the right 'to determine his place of residence and the authority to act on his behalf.'" *Id.* at 554 n.2 (citation omitted). Under Ohio law, "[t]he wife and husband are the joint natural guardians of their minor children" and "neither parent has any right paramount to the right of the other." *Id*. (citation omitted).

2006) (petitioner's revocation of consent to child's relocation had no effect, because an *ex post* "change of heart" that "disrupts a child's residential environment and thwarts shared parental intent" presents "the type of unilateral act that the Hague Convention was designed to prevent").

### III. Ms. Vittori Objects To The Citation Of *Armiliano v. Zaric Armiliato*

Ms. Vittori objects to the citation to *Armiliato v. Zaric-Armiliato*, 169 F.Supp.2d 230 (S.D.N.Y. 2001) for any purpose other than to set forth the relevant provisions of the Italian Civil Code. The *Armiliato* decision applies outdated law,[6] and its facts differ from those here in significant ways.

The respondent in *Armiliato* absconded in secret from Italy with her child; her husband was not even aware that his child was in the United States until he received a letter from the respondent's attorney. *Id.* at 234, 239. For the seven months immediately before the removal, the child had regularly attended school in Italy. *Id.* at 238. And once the respondent arrived in the United States, she had no local family or other personal ties, and she overstayed her visa with

---

[6] *Armiliato*'s explication of the law of habitual residence has been superseded by *Gitter v. Gitter*, 396 F.3d 124 (2d Cir. 2005). When *Armiliato* was decided, "[t]he Second Circuit ha[d] not had occasion to define 'habitual residence.'" *Armiliato*, 169 F. Supp. 2d at 237. (In addition, while the Court looked to decisions made by English courts, it did not consider *In re Bates*, [1989] CA 122/89, 1989 WL 1683783 (High Ct. Fam. Div.) (Eng.). The Court acknowledged that *In re Bates* was a significant precedent but was unable to obtain a copy of the decision. *Armiliato*, 169 F. Supp. 2d at 237 n.6.) The Court, therefore, constructed its own test, one that focuses primarily on "objective manifestations" of parents' "settled intent," such as the passage of an appreciable period of time and whether a stay was intended to be "temporary and finite." *Id.* at 238.

In contrast, *Gitter* directs a court deciding a child's disputed habitual residence to "inquire into the shared intent of those entitled to fix the child's residence (usually the parents) at the latest time that their intent was shared," by looking at both "actions" and "declarations." *Gitter*, 396 F.3d at 134. "Focusing on intentions gives contour to the objective, factual circumstances surrounding the child's presence in a given location." *Id.* at 132. Contrary to the implication of *Armiliato*, "[n]ormally the shared intent of the parents should control the habitual residence of the child," even if the child has only been in the intended residence for a short time. *Id.* at 134.

no means of normalizing her immigration status or receiving employment authorization, leading the Court to find that she "cannot remain in the United States indefinitely." *Id*. at 239.

      Here, by contrast, Mr. Ermini travelled side-by-side with his children from Italy to the United States, where he personally leased a home for the entire family. Resp.'s FOF ¶¶ 108-110. For the ten months preceding the alleged retention, Emanuele and Daniele were attending school and acclimatizing to the United States, with Mr. Ermini's consent and encouragement. *Id*. at ¶¶ 108-143. Ms. Vittori and Mr. Ermini intended for the move to last for at least three years. Resp.'s COL ¶ 18. Today, Ms. Vittori has close ties with her extended family in the United States, and has a pending application for U Non-immigrant Status, which will make her and the children eligible for permanent residency, employment authorization, and other benefits. *See* Resp.'s FOF ¶¶ 125-143 (regarding family ties); Resp's COL ¶ 59 n. 18 (regarding Ms. Vittori's immigration status).[7] Given *Armiliato*'s markedly different facts, Ms. Vittori objects to the Court's reliance on it as explained above.

---

[7] *See Demaj v. Sakaj*, 09 Civ. 255, 2012 WL 476168, at *2 (D. Conn. Feb. 14, 2012) ("With the approval of their new nonimmigration status of legal permanent residents of the United States, Respondent and the children were issued Social Security cards and Employment Authorization cards, which Respondent used to obtain a Connecticut driver's license, and to register the children for Connecticut's Supplemental Nutrition Assistance Program and the healthcare program."), *reconsideration denied*, 09 Civ. 255, 2012 WL 965214 (D. Conn. Mar. 21, 2012).

Dated:  New York, New York
         April 8, 2013

                Respectfully submitted,

                Wilmer Cutler Pickering Hale and Dorr LLP

                */s/ Sanket Bulsara*_____
                Sanket J. Bulsara
                Jacob Press
                Tamar Kaplan-Marans

                7 World Trade Center
                250 Greenwich Street
                New York, NY 10007
                Tel.:  (212) 230-8800
                Fax:  (212) 230-8888
                E-Mail:
                Sanket.Bulsara@wilmerhale.com
                Jacob.Press@wilmerhale.com
                Tamar.Kaplan-Marans@wilmerhale.com

                *Counsel for Respondent Viviana Vittori*